UNIVERSAL UNDERWRITERS
INSURANCE CO., Relator,

v.

Honorable Paul F. FERGUSON, Judge of the
149th District Court, et al., Respondents.

No. B–2552.

Supreme Court of Texas.

July 21, 1971.

Rehearing Denied Oct. 6, 1971.

Lorance & Thompson, Tom Lorance, Houston, for relator.

Powell, Tucker, Kain & Reedy, Tom F. Coleman and Paul A. Tucker, Houston, for respondents.

WALKER, Justice.

By an original proceeding in this court, relator seeks a writ of mandamus to compel The Honorable Paul F. Ferguson, Judge of the 149th Judicial District, to set aside a purported nunc pro tunc order entered on January 4, 1971. We have determined that relator is entitled to the writ.

In 1966, Walter Stedman recovered a judgment against Wilma Brothers for personal injuries sustained in an automobile collision. This judgment became final and has been partially paid. On May 10, 1967, Stedman filed suit against relator to recover the unpaid balance on the judgment, alleging that Wilma Brothers was an additional insured under a policy issued by relator to Curry Motor Company, Inc. This is the suit with which we are now concerned. Relator filed an answer on June 19, 1967. On October 23, 1970, Judge Ferguson dismissed a number of cases for want of prosecution. Stedman's suit was one of the cases dismissed, and a notation to that effect was entered on the docket. On October 26, 1970, Judge Ferguson signed an order entitled "District Court Dismissal Docket" reading as follows:

On this the 23rd day of October, A. D. 1970 the docket of the District Courts of Brazoria County, Texas, was sounded and the following cases were dismissed for want of prosecution, to-wit: [list of cases, including No. 48,223, Walter Stedman v. Universal Underwriters Insurance Co.].

\* \* \* \* \* \*

Rendered and entered on this the 26th day of October, A.D. 1970.

On December 15, 1970, Stedman filed a bill of review to set aside the order of dis-

missal and for judgment against relator. Relator answered and the bill of review is pending at this time. On December 21, 1970, Stedman filed a motion for a nunc pro tunc order setting aside the judgment of dismissal on the ground that the dismissal was the result of clerical error "in that the notice of dismissal docket to be held on October 23, 1970" listed relator's attorney as attorney for the plaintiff, Stedman. As a result of this error, it was alleged, the notice intended for Stedman's attorney was sent to relator's attorney. Since Stedman's attorney had no notice that the case was to be dismissed, he did not appear at the call of the docket. It was further alleged in the motion that the court had no intent to dismiss any case wherein notice had not been properly sent and that the case was being prepared for trial at the time of the dismissal.

Relator opposed the motion for a nunc pro tunc order on the ground that the mistake sought to be corrected was judicial rather than clerical and that the trial court was without jurisdiction to set aside its prior dismissal of the case. After a hearing held on January 4, 1971, the trial court entered an order purporting to reinstate the case on the docket of the court. Relator subsequently moved to set aside the nunc pro tunc order, and this motion was overruled.

■ The nunc pro tunc order was entered more than thirty days after the case was dismissed, and neither the bill of review nor the motion for a nunc pro tunc order was filed in time to be considered a motion for a new trial. Under the provisions of Rule 329b, Texas Rules of Civil Procedure, the court was without jurisdiction to set aside or modify, except by bill of review, the judgment of dismissal that had been rendered. The only action it had power to take at the nunc pro tunc hearing on January 4, 1971, was to correct clerical errors, i. e. mistakes or omissions that prevented the judgment as entered from accurately reflecting the judgment that was

rendered. See Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040.

In Knox v. Long, 152 Tex. 291, 257 S.W. 2d 289, judgment was rendered dismissing 180 cases for want of prosecution. The docket sheets on two additional cases were laid aside by the judge, and these two cases were not dismissed. The two cases were erroneously included in the written judgment of dismissal as entered, and it was held that this clerical error was subject to correction by nunc pro tunc judgment after the end of the term at which the original judgment of dismissal was entered.

■ Our situation here is different, because Stedman's case was included in the judgment of dismissal as rendered. This may well have been caused by a clerical error in the sense that the case would not have been dismissed if the clerk had given proper notice to Stedman's attorney. "But, errors in rendered and entered judgments are not clerical merely because they are based upon or grow out of clerical errors." Finlay v. Jones, Tex.Sup., 435 S.W.2d 136, 138. Dismissal of the case was a mistake in the sense that it would not have been dismissed if the court had known the true facts, but rendition of the judgment of dismissal was nevertheless a judicial act that is not subject to correction by nunc pro tunc order after expiration of the thirty-day period specified in Rule 329b. Love v. State Bank & Trust Co., 126 Tex. 591, 90 S.W.2d 819. We hold that the trial court had no jurisdiction to set aside its prior judgment of dismissal by nunc pro tunc order more than thirty days after the judgment was rendered.

■ Respondents argue that the validity of the nunc pro tunc judgment cannot be determined without a statement of facts showing the evidence introduced at the hearing on January 4, 1971. A statement of facts is not necessary in this instance, because all the relevant facts are affirmatively disclosed by the record. Although the trial court "ordered, adjudged and decreed" that the case was included in the order of dismissal as the result of a clerical error, it "found as a fact that the above numbered and styled cause was dismissed as the result of a clerical error." The court also found "the material allegations in Plaintiff's Motion for Nunc Pro Tunc Order to be true." This refers to the original and supplemental motions for a nunc pro tunc judgment. The material allegations of these motions are set out in one identical paragraph that is quoted in the margin.[1] There is no allegation that the case actually was not dismissed but was included in the order of dismissal as the result of a clerical error, and the trial court has not made a finding to that effect.

The petition for writ of mandamus and reply in the present proceeding are each verified by counsel for the respective parties. Apparently neither affiant was present at the docket call on October 23, and neither party has filed an affidavit or even a statement by anyone who has personal knowledge of the facts. In these circumstances and since the petition and reply do not join issue on any material fact, both may be accepted as correctly representing the facts they purport to state. The verified petition states explicitly that on October 23, 1970, Judge Ferguson "pronounced

1. "This said cause was dismissed for want of prosecution as a result of clerical error in that the notice of dismissal docket to be held on October 23, 1970 listed Defendant's attorney, to-wit Tom Long, as Plaintiff attorney on the dismissal docket and the said copy of the dismissal docket intended to be sent and sent as a matter of practice to Plaintiff's attorneys in causes set for dismissal was in fact sent to Defendant's attorney, Tom Long. Plaintiff's attorney did not receive the said notice of dismissal and was not informed by Defendant's attorney of the error and consequently, Plaintiff's attorney did not appear at the dismissal docket to show cause why the case should not be dismissed. The Court had no intent to dismiss any case wherein notice had not been sent to the proper attorney. Further that the said case is not one which is proper for dismissal and that same has been and is being actively prosecuted and prepared for trial."

a judgment of dismissal for want of prosecution and made a docket entry on the docket sheet in said cause, concurrently therewith." This has not been challenged except by two sentences in respondent's answer to the petition,[2] and similar statements in the brief. These statements are so qualified that they do not raise an issue of fact concerning the rendition of the judgment of dismissal on October 23, 1970.

The order of dismissal entered on October 26, 1970, recites that a judgment of dismissal was rendered on October 23, 1970. The allegations of the original and supplemental motions for a nunc pro tunc judgment as well as the factual findings in the nunc pro tunc judgment indicate that the case was, in fact, dismissed. The verified petition for writ of mandamus states that a judgment of dismissal was pronounced on October 23, 1970, and there is nothing to the contrary in the record. With the record in this condition, it is our opinion that no useful purpose would be served by requiring a statement of facts. If the case had not actually been dismissed and had simply been included in the order of dismissal as the result of a clerical error, we are satisfied that respondents would have supplied an affidavit stating the true facts.

█ It has also been suggested that the writ of mandamus should be denied because issuance of the writ will restore an unjust advantage gained by relator. This is on the theory that the attorney then representing relator should have advised either the court or opposing counsel that he had received the notice of the dismissal docket intended for Stedman's attorney. At our request we were furnished copies of a letter and list of cases that apparently should have been mailed by the district clerk to

Stedman's attorney on or about August 14, 1970. If these were received by the attorney then representing relator, a careful reading of them might have caused a person of ordinary prudence in his position to realize that he had been sent a notice intended for Stedman's attorney. We have also been furnished an affidavit of one of the attorneys representing relator at the time stating that the notice was not received by him or his co-counsel.

It would be idle to pursue that line of inquiry in the present proceeding. In the first place, respondents have not contended in this Court that counsel for relator breached any duty owing either to the court or opposing counsel. In the second place, the nunc pro tunc judgment is void, and it is to the interest of all parties that it be so declared at this time rather than at the conclusion of an appeal following a trial of the "reinstated cause" on the merits. Leave to file the petition for writ of mandamus having been granted, it is our opinion that the petition should now be granted without further inquiry concerning either the conduct of relator's attorney or the justice of its position in the trial court.

Respondent Stedman's remedy, if any, is by bill of review. In determining whether he is entitled to equitable relief, it will be necessary to decide whether the facts of this case satisfy, or warrant any modification or relaxation of, the rules ordinarily governing the right to a bill of review as laid down in Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996. · See Hanks v. Rosser, Tex.Sup., 378 S.W.2d 31.

Writ of Mandamus will issue in the event the nunc pro tunc order of January 4, 1971, is not set aside.

---

2. "Further, it is specifically denied that on October 23, 1970 that Respondent, while sitting as Judge of the 149th Judicial District Court of Brazoria County, Texas, pronounced a Judgment of Dismissal for want of prosecution in that there is no record of any such proceeding or pronouncement. * * * It is further denied that the docket entry on the docket sheet in this cause was made concurrently with any pronoucement in that the record clearly reflects that the docket entry is a stamped entry and that same is not signed by the Judge whereas all the other docket entries in this cause are signed by the Judge."

DANIEL, Justice (dissenting).

I respectfully dissent.

It is undisputed that this suit by plaintiff, Walter Stedman as next friend of the injured Herbert Stedman, against Universal Underwriters Insurance Company for $228,720.30 was listed along with fifty-five other cases on the blanket dismissal order of October 26, 1970, without any notice to plaintiff's attorney or any opportunity for him to be heard. The notice intended by the clerk for plaintiff's attorney was by mistake mailed to the attorney for the defendant insurance company. Because of this, plaintiff's attorney had no notice that the case was listed on the dismissal docket call set for October 23, 1970, until more than thirty days after the blanket dismissal order of October 26, 1970.

It was to correct this mistake and injustice that Judge Ferguson entered the nunc pro tunc order of January 4, 1971, striking this case from the list attached to the blanket dismissal order and restoring it to the docket. The latter action was taken only after due notice to the parties and a formal hearing of "the evidence" and "stipulations" of the parties, from which Judge Ferguson concluded and adjudged that this case "was included in the Order dismissing numerous causes for want of prosecution * * * as the result of a clerical error." The very basis of an entry of a judgment nunc pro tunc is that an injustice is being prevented. Gulf, C. & S. F. Ry. Co. v. Canty, 115 Tex. 537, 285 S.W. 296, 302 (Com. of App., 1926 jdgt. adopted).

The issue here is whether including this case on the blanket dismissal order of October 26 was a "judicial" error and therefore not subject to correction by Judge Ferguson after thirty days, as contended by defendant-relator, or whether it was a "clerical" error and therefore subject to correction after such period under Rule 317, T.R.C.P., and the general power of the courts to amend their records, nunc pro

tunc, so as to truthfully recite their actions.

The majority holds that the mistake was judicial rather than clerical and that the nunc pro tunc order is therefore void. My dissent stems from the fact that I have difficulty dignifying as a "judicial action" the mistake of including this, an active case, on the automatic dismissal docket and thereafter carrying it forward on the list attached to the blanket dismissal order, all without notice to plaintiff and without a hearing at which there was any exercise of judicial reasoning, discretion or determination. Every mistake in an act, order or procedure is not judicial in nature simply because it is taken, signed or ordered by a judge. Judges also can make clerical errors. Freeman on Judgments (5th Ed.) #146, states:

> "But 'clerical' is employed in a broad sense as contradistinguished from 'judicial' error and covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. In other words, the distinction does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel or by the judge. Mistakes of the court are not necessarily judicial error. Thus if the judgment or some provision in it was the result of inadvertence, as where the court was laboring under a mistake or misapprehension as to the state of the record or as to some extrinsic fact, but for which a different judgment would have been rendered, the judgment may be vacated or may be corrected to correspond with what it would have been but for the inadvertence or mistake."

Mr. Justice Field held in Windsor v. McVeigh, 93 U.S. 274, 277, 23 L.Ed. 914 (1876):

> "A sentence of a court pronounced against a party without hearing him or giving him an opportunity to be heard,

is not a judicial determination of his rights, and is not entitled to respect in any other tribunal." He further quoted with approval from another case which said that a proceeding "where no notice, written or constructive, is given, whatever else it might be called, would not be entitled to be dignified with the name of a judicial proceeding."

Although trial courts have wide discretion in dismissing cases for want of prosecution, it is fundamental that a plaintiff should have prior notice and an opportunity to be heard. Callahan v. Staples, 139 Tex. 8, 161 S.W.2d 489 (1942); Oehler v. Oehler, 422 S.W.2d 240 (Tex.Civ.App. 1967, writ ref. n. r. e.); Vise v. Foster, 247 S.W.2d 274 (Tex.Civ.App.1952, writ ref. n. r. e.). As to the plaintiff, these two essential elements of a judicial action, notice and hearing, were absent in the blanket dismissal procedure.

In some jurisdictions a judgment of dismissal without notice is held to be void and subject to direct or collateral attack.[1] I recognize that as of this date, our Texas authorities, including Love v. State Bank & Trust Co., 126 Tex. 591, 90 S.W.2d 819 (1936), relied upon by the majority, are to the contrary. However, I do not think that the holding in *Love* is applicable to the fact and procedural situation presented in this case or that it should be extended to cover same.

The majority properly states that only clerical errors in a judgment may be corrected by a nunc pro tunc order of the trial court more than thirty days after rendition. However, in holding that the error here was judicial rather than clerical, the majority gives no effect to the fact that Judge Ferguson heard evidence and stipulations upon which he based his judgment striking this case from the blanket dismissal order on the grounds that its inclusion was due to a clerical error.

In Knox v. Long, 152 Tex. 291, 257 S.W.2d 289 (1953), this Court had before it an almost identical blanket dismissal order. The Court recognized that on motion for judgment nunc pro tunc the trial judge could hear evidence, or consider his own recollection and testimony, in determining that he had not actually previously *rendered* or *pronounced* a judgment of dismissal of the *Knox* case, and in arriving at his legal conclusion that the case had been included in the blanket dismissal order by reason of a clerical mistake. This Court upheld the nunc pro tunc judgment eliminating the case from the dismissal order.

The difference in the *Knox* case and this one is that there was a statement of facts in *Knox* showing the evidence which the trial court heard and on which he based his nunc pro tunc judgment. We have no statement of facts in this case showing the evidence heard by Judge Ferguson, or given by him from his own recollection, in support of his nunc pro tunc judgment. In the absence of a statement of facts or some conclusive showing to the contrary, it should be presumed that sufficient evidence was introduced to support the judgment of the trial court. Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683 (1951); Commercial Credit Corp. v. Smith, 143 Tex. 612, 187 S.W.2d 363 (1945); McElyea v. Parker, 125 Tex. 225, 81 S.W.2d 649 (1935); Mutual Inv. Corporation v. Hays, 59 S.W. 2d 97 (1933, Com.App.). Under this rule we are entitled to presume that Judge Ferguson heard or gave just as much relevant evidence as the trial court did in *Knox* showing that he had not in fact on October 23 *rendered* or *pronounced* a judgment of dismissal and that the case was therefore mistakenly listed in the blanket order of

1. Thompson v. McCormick, 138 Colo. 434, 335 P.2d 265 (1959); Healer v. Kansas City Public Service Co., 251 S.W.2d 66 (Missouri Sup.1952); Seela v. Haye, 256 Iowa 606, 128 N.W.2d 279 (1964); Miot v. Jo Carl Realty Corp., 19 A.D.2d 889, 244 N.Y.S.2d 721 (1963); Harris v. Board of Education, 152 Cal.App.2d 677, 313 P.2d 212 (1957).

October 26. A finding of this nature is implicit in his conclusion of law and judgment nunc pro tunc.

This presumption finds support rather than conclusive contradictions in the records which have been filed herein. They show the similarities between certain facts here and those in *Knox*, as well as the differences between this case and the *Love* case. All involved original blanket dismissal orders, but in *Love* the judge also signed and entered a separate dismissal order in that particular case, leaving no question but that he had both *rendered* and entered its dismissal. In this case, as in *Knox*, the trial court did not enter a separate order evidencing either the *rendition* or entry of a judgment of dismissal of this particular case as is required by Rule 306a, T.R.C.P. The significance of this difference was stated by this Court in *Knox* as follows:

"This case is plainly distinguishable from the case of Love v. State Bank & Trust Co. of San Antonio, 126 Tex. 591, 90 S.W.2d 819. In the Love case the order signed was not prepared and signed as evidence of a judgment theretofore rendered in another case as was the order here. On the contrary, the opinion in the Love case recites that the order there signed by the trial court was prepared for that particular case, and the judge rendered a judgment dismissing the cause. When signed by the judge it constituted both the judicial act of dismissal and evidence of that act. In this case, on the other hand, the judgment of dismissal which the formal order was intended to evidence did not involve this case at all. The trial judge testified 'it was not my intention to dismiss the present case nor the Green case; both of which I had knowledge was actively pending on the docket. * * * I meant

to leave them on the docket.' The order which reinstated the cause after a hearing recites 'that the inclusion of this suit in the blanket order of dismissal entered on August 8, 1950 was erroneously included * * * that the inclusion of such case by number and style was erroneous, a clerical mistake and misrecital within a decree or order of the court and was never intended to be dismissed, and should be now corrected.' In the Love case the order entered was the judgment the court had pronounced, whereas in the case at bar the order entered was the exact reverse of the judgment actually pronounced by the court. In this case the entry was clearly a clerical mistake." [2]

In *Knox*, the statement of facts shows that the trial court actually signed the dismissal notation stamped on the docket sheets of 182 cases, including the *Knox* case, but that he held these for further study with the clerk as to whether any were active and should not be dismissed. Of this procedure, this Court said:

"At this point in the proceedings we think it may safely be said that no judgment of the court had yet been rendered in any of the 182 cases for it appears beyond dispute that although the docket entries had been signed the entries were provisional and the judge was still in control of all of them with no intention of permitting any of them to become judgments of the court until he first satisfied himself that none of the cases were active."

The trial judge testified in *Knox* that the clerk informed him that the *Knox* case and one other of the 182 were active and should not be dismissed. Whereupon, these two docket sheets were laid aside, and the judge said he did not intend or order them

<hr/>

2. Previously, this Court had overruled a Motion for Leave to File Writ of Mandamus in the *Knox* case, as well as a motion for rehearing thereon, each of which presented similar facts and sought the same relief as defendant-relator now seeks in the present mandamus proceeding. A-2984, Knox v. Fred Erisman (1950–1951), Record Files of the Supreme Court of Texas.

to be dismissed. Nevertheless, all of the signed docket sheets were returned to the clerk's office and the *Knox* case was listed on the blanket dismissal order at the time that blanket order was signed by the judge.

With no statement of facts before us in this case, we do not know whether Judge Ferguson testified to a similar fact situation or not. However, from what has been filed herein, we do know that he did not intend to dismiss any case on which notice had not been mailed to the attorney for plaintiff; he did not sign the stamped dismissal notation on the docket sheet of this case; he did not enter a separate order dismissing this particular case; and upon a full hearing of the evidence and stipulations, he concluded as a matter of law that this case was included on the blanket dismissal order of October 26, 1970 "as the result of a clerical error," and entered judgment restoring it to the docket. With this much known to us, it is conceivable that any action Judge Ferguson took with reference to the dismissal list on October 23 was provisional as in *Knox* until he could check further with the clerk; that after discovering this to be an active case, or that the wrong attorney had been listed for notice, he directed that this case be stricken from the list, but that it was not done before he signed the blanket memorandum order of October 26, 1970. If this is what happened, then a dismissal was never *pronounced* or *rendered* in this case any more than was done in *Knox*. Under such facts, as in *Knox*, the inclusion of this case on the blanket dismissal order was a clerical rather than a judicial mistake, and was properly corrected by the nunc pro tunc order.

This possibility and presumption in support of the judgment seems further justified by the clerical nature of the entire dismissal procedure employed in the Brazoria County District Courts. It is clear from the certified copy of the notice of the clerk dated August 14, 1970, and mailed to all attorneys listed under the "Plaintiff's Attorney" column on an attached three-page list of 147 cases, that this was not a show cause order or notice calling for a hearing and *judicial determination* of whether the cases listed should be dismissed for want of prosecution.[3] Staying on the three-page dismissal docket prepared by the clerk or being stricken therefrom was entirely up to the determination of plaintiff's attorney in each case. Those who received the notice could prevent their cases from being left on the dismissal docket before it was attached to a blanket dismissal order by merely sending the clerk a letter asking that the case be left pending.

Under this procedure, it is probable and we are entitled to presume from the sworn answer filed in behalf of Judge Ferguson[4] and in support of his nunc pro tunc judgment, that all he did at the dismissal docket call on October 23 was to ascertain what

3. The notice from the clerk reads in part as follows:
"The Civil Dismissal Docket will be called on October 23, 1970, at 1:00 o'clock P. M. in the District Courtroom, Courthouse, Angleton, Brazoria County, Texas. You appear and ask that your case be left on the pending docket, or write the District Clerk and ask that the case be left pending. * * * You must answer the docket in person or have a letter on file in the District Clerk's Office or the case will be dismissed for want of prosecution."
The attached list did not name and was not mailed to attorneys for defendants (except as in this case where the clerk had mistakenly listed the name of de-

fendant's counsel under the "Plaintiff's Attorney" column), but at the bottom of two pages of the list of cases was this notation: "Please notify opposing counsel of this docket call."

4. Quoted in footnote 2 of the majority opinion. Also, a certified copy of Plaintiff's Petition for Bill of Review, which was filed in this Court by relator and made a part of its petition "for all purposes", states under oath that "prior to signing said Order of Dismissal the Court did not hold a hearing or make any judicial determination as to whether or not the said cause had been abandoned or was otherwise proper for dismissal for want of prosecution."

cases should be stricken therefrom due to requests from plaintiffs' attorneys. If so, this was clerical in nature, because it involved no judicial reasoning, determination or discretion on the part of Judge Ferguson. It would seem to be a reasonable presumption in support of his nunc pro tunc judgment of January 4, 1971, that he did not in fact on October 23, 1970 *pronounce* or *render* a judgment of dismissal of the cases which remained on the dismissal docket, either individually or collectively.[5] His memorandum blanket dismissal order of October 26, 1970 does not recite that a judgment of dismissal had been *rendered* or *pronounced* in the fifty-six cases which remained thereon; it merely recites that they "were dismissed" on October 23. It was from the order of October 26, containing such recital, that Judge Ferguson struck the present case, after hearing the evidence and concluding that it had been included on the attached list by reason of a clerical error.

The majority indulges in no presumptions in support of Judge Ferguson's nunc pro tunc judgment, concluding that no statement of facts as to what evidence he heard or gave in support of his judgment is necessary, because all relevant facts are affirmatively disclosed by the record in *this* proceeding and that they conclusively show that Judge Ferguson *rendered* a judgment dismissing this case on October 23, 1970. I find no such conclusive showing in *this* record. Since this involves interpretations as to the weight and effect of documents in this record, and the majority has held otherwise, I shall only briefly state the contrary interpretations which I consider justi-

fied in support of the judgment. First, the majority gives considerable weight to the sworn pleading of relator that on October 23, 1970, Judge Ferguson *pronounced* a judgment of dismissal of this case and made a docket entry on the docket sheet in said cause, concurrently therewith. I do not consider this conclusive evidence that Judge Ferguson took such action. As noted by the majority, both the petition of the relator and the reply in behalf of Judge Ferguson were verified by counsel who were not present at the docket call on October 23. The docket sheet shows only a stamped notation of dismissal, and it was not signed by Judge Ferguson, even though all subsequent docket entries bear his signature.

Under such circumstances, I prefer to accept the sworn pleading filed on behalf of Judge Ferguson specifically denying that he pronounced any such judgment on October 23, even though it is qualified by the language "in that there is no record of such proceeding or pronouncement." I do not assume that this was an intentional qualification to evade the fact that he did make such an oral pronouncement. If the presumptions made herein are correct, I agree with the majority that it would have been desirable for Judge Ferguson to have filed a more explicit affidavit herein showing that he did not in fact render or pronounce a judgment of dismissal orally or in writing on October 23, 1970. If he fails to do so on rehearing, then I will assume that the qualification was intentional and will conclude that the majority has reached the correct result in this case.

Next, the majority refers to the recitation in the order of October 26 that the at-

---

5. This procedure is akin to if not taken from the "automatic" dismissal procedures which have been followed for many years under local rules of federal district courts. In some courts the clerks handle the entire procedure, including entry of the dismissal. 7 Cyclopedia of Federal Procedure (2d Ed.) #3248, p. 392; 3 Moore's Federal Practice (1st Ed.), pp. 3043–3044; ibid. (2d Ed.), p. 1116; ibid., p. 4705; 5 Moore's Federal Practice (2d Ed.), p. 115. Even when such orders are signed by the judge, they are held to be subject to reinstatement after term time on account of errors of the clerk in placing cases on the automatic dismissal docket. United States v. Sterling, 70 F.2d 708 (U.S.C.C.A., 2d Cir., 1934, cert. den. Commercial Trust Co. of New York v. United States, 293 U.S. 584, 55 S.Ct. 97, 79 L.Ed. 679); Fidelity & Deposit Co. v. MacGruer, 77 F.2d 83 (U.S.C.C.A., 9th Cir., 1935); New England Furniture & Carpet Co. v. Willcuts, 55 F.2d 983 (U.S.D.C., Minn., 1931).

tached list of 56 cases were dismissed on October 23. As heretofore indicated, that is the precise order which Judge Ferguson, after hearing the evidence, concluded to be a clerical error in listing this case, and from which his nunc pro tunc order strikes this case. There was a similar recitation of dismissal in the blanket order in the *Knox* case, but that did not foreclose the showing by evidence that the *Knox* case was listed by reason of a clerical error. The majority interprets the finding in the preamble of the nunc pro tunc order itself that this case "was dismissed as the result of a clerical error" as referring to the alleged dismissal on October 23 rather than to the decretal portion of the judgment which seems to clearly relate the finding and the adjudication to the same October 26 order. I fully understand how the majority can reasonably arrive at its interpretation of this "finding" in the judgment, but I also believe the contrary interpretation is reasonable and that under such circumstances we should apply the interpretation which would sustain the judgment in preference to one which would render it void. Davis v. First National Bank, 145 S.W.2d 707 (Tex.Civ. App.1940, aff'd 139 Tex. 36, 161 S.W.2d 467); Keton v. Clark, 67 S.W.2d 437 (Tex. Civ.App., 1934, writ ref.); 1 Freeman on Judgments #76, p. 133.

Finally, the majority interprets plaintiff's motions for nunc pro tunc judgment to indicate that the case was in fact dismissed on October 23. A reading of the entire text of the motions indicates that they refer only to the "dismissal" contained in the October 26 order, which was sought to be set aside, and do not refer to or concede any prior renditions or pronouncements.

For the reasons stated, in the absence of a statement of facts and in view of the limited record before us, I would indulge every presumption in support of Judge Fer-

guson's nunc pro tunc judgment and deny the application for writ of mandamus.

I assume the responsibility for having suggested that the writ should be denied because it would result in restoring an unjust advantage gained by defendant through the failure of its former attorney to advise the court or opposing counsel that he had been mistakenly listed as "Plaintiff's Attorney" and had received the notice intended by the clerk for plaintiff's attorney. Plaintiff's allegations concerning these facts are quoted from the motions for judgment nunc pro tunc in footnote 1 of the majority opinion. Mandamus is a discretionary writ, and not a writ of right. Although a legal remedy, issuance of the writ is largely controlled by equitable principles, and it should not be granted in aid of those who do not come into court with equitably clean hands. Westerman v. Mims, 111 Tex. 29, 227 S.W. 178 (1921); Moore v. Rock Creek Oil Corporation, 59 S.W.2d 815 (Tex.Com.App.1933, judt. adopted). In original proceedings, this equitable doctrine is considered by courts sua sponte whether or not it was pled or otherwise raised by a party entitled to its benefit. See 27 Am.Jur.2d 668 and 4 A.L.R. 47.

However, an affidavit filed after oral argument by a member of the firm which formerly represented defendant raises a question as to whether the notice was actually received by his co-counsel, who was mistakenly listed in the notice as plaintiff's attorney. Since the majority withholds further inquiry and expression of opinion concerning this phase of the case, I shall do likewise, except to say that this subject might be highly relevant in a bill of review proceeding, and to observe that if defendant's attorney did in fact receive the notice, it was his duty as an officer of the court to inform the court of the error and notify opposing counsel of the setting as directed in the notice.[6]

6. See Lyons v. Paul, 321 S.W.2d 944 (Tex. Civ.App.1958, writ ref. n. r. e.); Ainsworth v. Dunham, 235 Or. 225, 384 P.2d 214 (1963); People v. Sleezer, 8 Ill.App. 2d 12, 130 N.E.2d 302 (1955, modified on

other grounds by the Supreme Court of Illinois in 10 Ill.2d 47, 139 N.E.2d 259, 1957); Wise, Legal Ethics, Second Edition, 1970, p. 288; Drinker, Legal Ethics, 1953, pp. 74–75. Restatement on Judg-

I would not be disturbed about the result of the majority opinion enough to write this dissent if we had an adequate rule under which a case dismissed without notice could be restored to the docket by the simple proof of facts such as those which are undisputed in this case, on motion filed within a reasonable time after discovery of the dismissal order. Some of the other states are ahead of us in adopting such a rule.[7] In our State, with the thirty day period provided in Rule 329b having expired before plaintiff's counsel learned of the dismissal order, and with limitation having run against institution of a new suit, plaintiff is left with no procedure under which he can have his day in court except through a nebulous bill of review proceeding in which he must try his entire lawsuit and run the full course of any appeals before ever knowing for certain whether his equitable grounds for "reinstatement" will satisfy the "narrow and restricted" requirements as laid down in Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996 (1950).[8] That is an obstacle course which only few plaintiffs have been able to run with success, judging from the reported cases. This is because the proceeding has not been looked upon with favor by the Texas courts. In *Hagedorn* this Court said:

> " * * * bills of review seeking relief from judgments are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted; and the rules are not to be relaxed be-

cause it may appear in some particular case that an injustice has been done."

*Hagedorn* leaves no room for restoration of a case to the docket solely because it was erroneously or mistakenly dismissed without notice to plaintiff. In addition, it requires allegation and proof of (1) a meritorious cause of action, (2) which plaintiff was prevented from pursuing "by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own." Unless the conduct of relator's former counsel is alleged and proved to have wrongfully prevented plaintiff from staying on the docket and pursuing his case, can he meet the second requirement of *Hagedorn* in an equitable bill of review? Or, will the principle announced in Hanks v. Rosser, 378 S.W.2d 31 (Tex.1964), be extended to a bill of review on account of the error of the clerk? This Court's decision in Hanks v. Rosser and the reference to it in the majority opinion in the present case lends hope that the hurdles of *Hagedorn* will be lowered or relaxed in the future,[9] especially in cases involving final judgments of dismissal without notice or opportunity to be heard.

In any event, as suggested above, there is need for a uniform rule applicable to involuntary dismissals, which should require notice and extend the district court's jurisdiction for some reasonable period in excess of the present thirty days in which to act on motions for reinstatement, upon proof that the movant had no notice of the dis-

---

ments, p. 385; Canons of Ethics of the Texas State Bar, Section 19; Code of Conduct of the American College of Trial Lawyers, Section 14(a).

7. For example, see Iowa's Uniform Rule for Dismissal for Want of Prosecution, Rule 215.1, Iowa R.C.P., 158 Iowa Code, Ann., 1971 pocket part, pp. 18–19, providing for reinstatement upon showing that the dismissal was the result of "oversight, mistake or other reasonable cause", within six months from the date of dismissal. See also Federal District Court Rule 60, which establishes reinstatement

proceedings and abolishes bills of review for such purposes. Title 28 U.S.C.A. Chapt. VII, Rule 60, p. 154.

8. See also the requirement for proper verification, which on "information and belief", was held to be insufficient in Caperton v. Wanslow, 18 Tex. 125 (1856).

9. Note, 43 Tex.L.Rev. 114 (1964). See also Vogel v. Vogel, 405 S.W.2d 87 (Tex. Civ.App.1966, writ ref. n. r. e.) ; Texas State Board of Examiners in Optometry v. Lane, 358 S.W.2d 636 (Tex.Civ.App. 1962, writ ref. n. r. e.).

missal within thirty days and that it was not due to any fault or negligence on his part. If granted or denied in a separate appealable proceeding, all parties can then know whether or not a case is legally back on the docket prior to a trial on the merits and the conclusion of an appeal.

Unless some rule of this nature is adopted, frequent injustices, attempted nunc pro tunc reinstatements, distinctions between clerical and judicial errors, and the restrictive requirements of bill of review, will continue to plague the bench and bar in cases of dismissals without notice.[10] If this dissent accomplishes no more than calling attention to this need, it may prove to be worth the time and paper consumed in its writing.

STEAKLEY, J., joins in this dissent.

---

10. For a general discussion of New York's attempt to solve the problem and the manner in which it affects the judicial system and members of the bar, see Supplementary Practice Commentary by Bernard D. Siegel under "Want of Prosecution" Rule 3216, McKinney's Consolidated Laws of New York, Ann., Vol. 7B, 1970 pocket part, pp. 22–23.