**ILLINOIS CENTRAL GULF RAIL-ROAD COMPANY,**
Plaintiff-Appellant/Cross-Appellee,

v.

**DELTA MILLWORK, INC.,**
Defendant-Appellee/Cross-Appellant.

No. 85–4610.

United States Court of Appeals,
Fifth Circuit.

Oct. 14, 1986.

F. Hall Bailey, Jackson, Miss., for plaintiff-appellant/cross-appellee.

John A. Crawford, Luther T. Munford, Jackson, Miss., for defendant-appellee/cross-appellant.

Before HILL and JONES, Circuit Judges and FELDMAN *, District Judge.

FELDMAN, District Judge:

We consider an appeal and cross-appeal arising out of a tariff dispute between a carrier and a shipper under the Interstate

* District Judge of Eastern District of Louisiana, sitting by designation.

Commerce Act, 49 U.S.C. § 1, et seq. The carrier, Illinois Central Gulf Railroad Company, appeals the lower court's award of attorneys' fees to the shipper, Delta Millwork, Inc. Delta appeals the lower court's denial of its claim for expert witness fees. We reverse the lower court's attorneys' fees award, and affirm its refusal to award as costs the expert witness fees sought.

## BACKGROUND

Illinois Central sued Delta claiming that it had undercharged Delta on certain freight shipments for timber products carried by the railroad from Van Wrinkle, Mississippi to Waverly, Virginia. Illinois Central believed that it had mistakenly charged Delta less than was warranted by the existing tariff.

Delta counterclaimed, contending that the carrier's claim constituted a breach of contract and tort. Delta sought actual and punitive damages, as well as an award of costs and attorneys' fees.

After a two-day bench trial, the magistrate dismissed Illinois Central's claim for additional freight charges, and dismissed, as well, Delta's counterclaim for actual and punitive damages.[1] However, the magistrate granted Delta's request for costs and attorneys' fees. By later order, the magistrate refused Delta's request that its ex-

pert witness fees be taxed as costs. The two rulings by the magistrate are the basis of this appeal and cross-appeal.

## I. THE ATTORNEYS' FEE AWARD

■ The magistrate awarded fees to Delta based upon 49 U.S.C. § 11705(d)(3), and his equitable powers. We hold that the magistrate erred in interpreting § 11705(d)(3) to authorize the fee award, and, further, that the magistrate's findings here preclude an award of fees pursuant to the equitable power of federal courts to do so.

49 U.S.C. § 11705 governs the rights and remedies of persons injured by railroad carriers. Subsection (d)(3) provides, in part, that "[t]he district court shall award a reasonable attorneys' fee as part of the *damages for which the carrier is found liable under this subsection*". (Emphasis added) Clearly, this provision makes a finding of liability on the part of the carrier, and resultant damages, a prerequisite to an award of fees. A finding of liability is the triggering mechanism for a statutory award of fees. The only provisions of § 11705 which impose liability are contained in subsections (b)(1)–(3).[2] Subsection (b)(1) of the statute provides that a carrier "is liable to a person for amounts charged that exceed the applicable rate for

---

1. The parties consented to trial before the magistrate. See, 28 U.S.C. § 636(c)(1).

2. While it has been argued to the Court that a literal reading of subsection (d)(3) suggests that attorney's fees are available only when damages are awarded for a violation of subsection (d), such a reading fails to comport with the legislative design in the recodification of the Interstate Commerce Act.

   In 1978 Congress restated the Interstate Commerce Act. The existing laws were reenacted as subtitle IV of Title 49, United States Code. The purpose of restatement was to substitute simple language for awkward and obsolete terms. The changes were comprehensive, but were made without substantive change to the existing law. *See* H.R.Rep. No. 95–1395, 95th Cong., 2nd Sess., *reprinted in* 1978 U.S.Code Cong. & Ad. News 3009, 3013, 3016–18. In some instances in making the revisions various sections were combined to form one single section. Such was the case with section 11705.

Section 11705 is a combination of 32 sections and subsections. The attorney's fee provision in subsection (d)(3) is based on former title 49, sections 8 (words after ninth comma), 16(2) (last sentence), and 908(b) (words after ninth comma) and (e) (last sentence). The remaining portions of these former sections are included in section 11705 as part of sections 11705(b)(2) (from section 8 and section 908(a) and (b)), 11705(c)(2) (from section 16(1) and (2)), and 11705(d)(1) (from section 16(2)). Since Congress did not intend to change existing law, and because the three sections from which section 11705(d)(3) arises are also included in section 11705, attorney's fees should be recoverable for any action brought under the present codification of those former sections. While subsections b(1) and b(3) do not originate from former law containing provisions awarding attorney's fees, it would be anomalous not to allow attorney's fees to be received under all provisions that award damages in section 11705, if an appropriate finding of liability is made.

transportation or service contained in a tariff". Subsection (b)(2) provides that a carrier "is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this subtitle".[3]

A review of the magistrate's memorandum opinion leaves no doubt that the magistrate went beyond the literal terms of § 11705(d)(3) by awarding attorneys' fees without a finding of liability on the part of the carrier. Indeed, in dismissing Delta's claims, the magistrate expressly held that Illinois Central was not liable "for amounts charged that exceed the applicable rate for transportation or service contained in a tariff", as contemplated by subsection (b)(1), because no overcharge had been exacted and no damages sustained. Moreover, the magistrate failed to find that Delta had sustained damages as a result of any act or omission of the carrier in violation of subsection (b)(2). Without finding the carrier liable, there was simply no room under subsection (d)(3) for the fee award. Cf. *George R. Hall, Inc. v. Superior Trucking Co.*, 532 F.Supp. 985, 999 (N.D.Ga.1982) (attorneys' fees not available unless there is a recovery of damages sustained in consequence of a violation of the Interstate Commerce Act).

Although the magistrate seemed to recognize that a finding of liability was a necessary predicate to an award of fees under (d)(3), he nevertheless stated that refusing Delta an award under the circumstances of this case would penalize Delta for pursuing its chosen legal strategy (a reference to the fact that Delta chose to defend against the claim for additional charges rather than remit payment and itself sue on the basis of the claimed overcharge). However, Delta had no cause of

action under subsection (b) because it had not yet paid the additional charges to Illinois Central. Delta had not been forced to pay a rate which exceeded that provided by law; nor had its rights otherwise been violated or injured. Since "[t]he court must give effect to the plain and obvious meaning of the statute without reading in or reading out", *General Electric Co. v. Southern Construction Co.*, 383 F.2d 135, 138 (5th Cir.1967), *cert. den.*, 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968), this Court holds that the magistrate's reliance upon § 11705(d)(3) to support an award of attorneys' fees was error.[4]

■ Nor do the findings of the magistrate support an award of attorneys' fees pursuant to a federal court's equitable power. The law of the Fifth Circuit with respect to the equitable power of the district court to award attorneys' fees was recently restated in *In re Owners of Harvey Oil Center*, 788 F.2d 275, 279 (5th Cir.1986):

> Federal courts have traditionally enjoyed the power, originating in equity to contravene the American rule, whereby litigants pay their own attorneys' fees, "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247–59, 95 S.Ct. 1612, 1616–22, 44 L.Ed.2d 141, 147–54 (1975) (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703, 713–14 (1974)). The purpose of this exception is to prevent abuse of the court system by parties which can best their opponents by simply spending time and attorneys' fees

---

**3.** Subsection (b)(3), which provides that a carrier "is liable for damages resulting from the imposition of rates for transportation or service the Commission finds to be in violation of this subtitle", is not pertinent to this discussion because this tariff dispute was not submitted to the Interstate Commerce Commission.

**4.** Illinois Central makes the additional argument that (d)(3) was only intended by Congress to permit an award of fees where the shipper (as opposed to the carrier) was bringing suit,

and only when the shipper was seeking to enforce an order to pay damages previously levied by the Interstate Commerce Commission against the carrier. Our holding that the magistrate had no statutory authority to award fees without an underlying finding of liability, renders it unnecessary to resolve such questions. Simply put, without a principal finding of liability, there was no basis under the plain words of § 11705(d)(3) for the fee award.

in dilatory litigation.... The principle of compensation based on vexatiousness applies whenever the federal courts are made the tool of improper conduct.... Either the lack of legal foundation or the abusive nature of litigation tactics employed by a party could support an award of attorneys' fees against it. Defense at trial, however, is not alone sufficient to justify a fee award to an opponent under the equitable rule.

The magistrate's findings confirm that the underlying controversy was nothing other than a good faith dispute between the shipper and carrier about the interpretation of the applicable tariff to the shipments at issue. Thus, a fee awarded as an exercise of the Court's equitable power would not meet the threshold test of *Harvey Oil Center* and other cases in this Circuit.

Illinois Central's original billing to Delta for the shipments was based on its assumption and understanding that certain "transit privileges" would apply. However, the carrier was subsequently informed by a weighing and inspection station that such privileges would not apply and that the costs of shipment would be higher; so Illinois Central billed Delta for the difference. Illinois Central's demand and subsequent filing of suit certainly are not evidence of improper conduct or bad faith (and the carrier's conduct was not found to be in bad faith). See *Louisville & Nashville Railroad Co. v. Mead Johnson & Co.*, 737 F.2d 683, 686 (7th Cir.1984), *cert. den.*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 320 (1984) ("if the carrier by mistake charges the shipper at a rate lower than the applicable tariff, the carrier not only may but must sue to recover the difference ... even if the carrier misquotes the applicable rate to the shipper"); *St. Louis Southwestern Railway Co. v. Garvey Elevators, Inc.*, 505 F.2d 625, 626 (5th Cir.1974) ("all lawful and authorized charges must be collected according to the terms of the tariff, even if the carrier, for example, inadvertently represents that the charge is less than it actually is"). It was the carrier's duty to enforce its understanding of the tariff.

In refusing to award Delta damages, the magistrate expressly noted that "[a]lthough ICG's interpretation of Tariff 4517 was ultimately proven to be erroneous ... [t]he issue of Tariff 4517's applicability to the subject shipments could not have been resolved without the assistance of expert testimony". "[T]his in itself", the magistrate remarked, "illustrates how a complex and arguably ambiguous tariff provision can be susceptible to varying interpretations regarding the proper rate to be levied." The magistrate characterized the suit as "ICG's apparent good faith effort in seeking to collect amounts it believed were lawfully owed under relevant tariff authorities", and did not reflect misconduct or ill purpose. These findings are simply incompatible with an award of attorneys' fees under the court's equitable power. They provide no support for such an award. Further, the magistrate made no finding of bad faith, vexatiousness, or oppression regarding the conduct of the litigation. Accordingly, we hold the magistrate had no basis for an award under the court's equitable power.

## II. EXPERT WITNESS FEES

█ Delta appeals the lower court's denial of its claim for expert witness fees. Delta's quest for such fees has been precluded, however, by this Court's recent decision in *International Woodworkers of America v. Champion International Corporation*, 790 F.2d 1174 (5th Cir.1986) (en banc). In *Woodworkers*, we held that the fees of non-court appointed expert witnesses are taxable by federal courts in nondiversity cases only in the amount specified by 28 U.S.C. § 1821 (establishing a maximum amount that may be allowed as witness attendance fees), except that fees in excess of that amount may be taxed when expressly authorized by Congress or when such an award is justified as an exercise of the court's equitable power. 49 U.S.C. § 11705(d)(3) does not expressly provide for an award of expert witness fees. Moreover, as the previous discussion makes

plain, there is no basis for either an award of attorneys' fees or expert witness fees under the court's equitable power. The magistrate was correct in refusing to tax as costs expert witness fees in excess of the amount recoverable under § 1821.

Accordingly, for all of the above reasons, we AFFIRM the lower court's denial of expert witness fees in excess of the amount provided for in 28 U.S.C. § 1821, and we REVERSE the lower court's award of attorneys' fees under 49 U.S.C. § 11705(d)(3), and its equitable power.